IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SHAUN MATZ,

                         Petitioner,                    OPINION AND ORDER

     v.
                                                          08-cv-491-slc
MATTHEW FRANK, DAN WESTFIELD,           08-cv-502-slc
PHIL KINGSTON, MIKE THURMER,
DON STRAHOTA, DANIEL BRAEMER,
LT. GREFF, DEBRA GEMPLER, GARY ANKARLO,
GEORGE KAEMMERER, CHARLES GRISDALE,
JEFF GARBELMAN, WILLIAM POLLARD,
MICHAEL BAENEN, PETE ERICKSON,
STEVEN SCHMIDT, MARTHA BREEN,
ROBERT MCQUEENY, MICHAEL VANDENBROOK,
TRAVIS BIDDELMAN, C.O. VASOS,
SGT. STEWART and JOHN DOES 1,

                         Respondents.

      Petitioner Shaun Matz is a prisoner in the Health and Segregation Complex at Waupun Correctional Institution, in Waupun, Wisconsin. Respondents are prison officials who petitioner contends are violating his Eighth Amendment rights by failing to provide him with adequate mental health care treatment.

      Petitioner filed a joint complaint with another prisoner, Matthew Schumacher, but I concluded in a previous order that their claims could not be joined in one lawsuit under Fed. R. Civ. P. 20 because they did not arise out of the same transaction. In addition, petitioner's own claims could not proceed in one action because some of the claims arose out of events at the Waupun Correctional Institution regarding one set of defendants and another set of claims arose out of events at the Columbia Correctional Institution regarding another set of defendants. Accordingly, I directed petitioner to inform the court whether he wanted to proceed with one or two lawsuits.

Petitioner has responded with a letter in which he says that he wishes to proceed with one lawsuit only, those claims arising out of events at the Waupun prison. That case will proceed as case no. 08-cv-491-slc. Case no. 08-cv-502-slc will be dismissed without prejudice to petitioner's filing it at a later date. (That case involved petitioner's claims against respondents Michael Vandenbrook, Travis Biddelman, CO Vasos and Sgt. Stewart.)

Because petitioner is prisoner, I am required under the 1996 Prison Litigation Reform Act to screen his complaint and dismiss any claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. In addressing any *pro se* litigant's complaint, the court must construe the complaint liberally. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). In his complaint, petitioner fairly alleges the following facts.

ALLEGATIONS OF FACT

Petitioner Shaun Matz has been incarcerated in the health and segregation complex Waupun Correctional Institution in Waupun, Wisconsin since January 22, 2007, when he was transferred from the Green Bay Correctional Institution. He has been diagnosed with various mental illnesses, including schizo-affective disorder, explosive disorder, major depression and adjustment disorder. He has an "extensive history" of suicide attempts and other self-abusive behavior.

At times relevant to this complaint, defendant Matthew Frank was the secretary of the Wisconsin Department of Corrections and defendant Dan Westfield was the department security chief.

Defendants Phil Kingston, Mike Thurmer, Don Strahota, Daniel Braemer, Debra Gempler, Lt. Greff, Dr. Gary Ankarlo, George Kaemmerer, Dr. Charles Grisdale and Jeff Garbelman all worked at the Waupun Correctional Institution in Waupun, Wisconsin. Defendant Kingston was the warden; Thurmer was the deputy warden and now is the warden; Strahota was the security director; Braemer was the lieutenant supervisor for health and security complex; Gempler was a security captain; Lt. Greff was the "security supervisor"; Ankarlo was the psychological services unit supervisor; Kaemmerer was a "crisis intervention" worker; Grisdale was a psychologist; Garbelman was a psychological associate.

Defendants William Pollard, Michael Baenan, Pete Erickson, Dr. Steven Schmidt, Martha Breen and Dr. Robert McQueeny all worked at the Green Bay Correctional Institution. Defendant Pollard was the warden; Baenan was the deputy warden; Erickson was the security director; Schmidt was the psychological service supervisor and Breen and McQueeny were psychiatrists.

Before petitioner arrived at the Waupun prison, he wrote letters to respondents Frank, Westfield, Pollard, Baenen, Erickson, Schmidt, Breen and McQueeny. In the letters, petitioner asked not to be transferred and he "made it known that he would kill himself" in the health and segregation complex. Respondents Breen and Schmidt warned respondent Ankarlo and Kaemmerer about petitioner's threats to kill himself. Breen and Schmidt told Ankarlo and Kaemmerer "to take every precaution to insure [petitioner's] safety." Ankarlo and Kaemmerer ignored the warnings.

Once petitioner arrived at the Waupun prison, he sent letters to respondents Kingston, Strahota and Ankarlo, writing that "there stood a great chance that [he] would commit suicide"

3

if he stayed in the complex "for even a short period of time." Each of these respondents ignored the letter.

The cells in the health and segregation complex have four concrete walls, "box car" doors and no windows through which prisoners can see outdoors or that allow in natural light. Petitioner is housed in isolation. Concrete dividers run along the center of the corridor outside petitioner's cell, preventing him from seeing other prisoners and enhancing his feelings of isolation. Petitioner's cell is constantly illuminated.

Petitioner is locked in his cell for "nearly" 24 hours a day. He is not allowed to have pictures of family or friends, newspapers, magazines or any personal hygiene or food items in his cell. He never sees the outdoors and is not exposed to sunlight. The "recreation space" is a 6' by 8' metal cage inside a concrete room that reminds petitioner of a dog kennel.

No screening is performed to detect and monitor prisoners with mental illnesses. Psychologists do not make rounds unless a prisoner is in observation.

The conditions exacerbate petitioner's mental illnesses, causing him confusion, anxiety and severe depression. Further, petitioner has no realistic chance of leaving the complex because his mental illness prevents him from progressing through the "step system," which requires good behavior.

On January 24, 2007, three days after petitioner arrived, petitioner cut both of his arms with razor, from his wrists to his elbow. Petitioner was taken to the hospital and received 25 stitches. When petitioner returned, he was placed in observation status. He cut himself and was taken to the hospital again on February 25, 2007.

On October 18, petitioner was moved to an observation cell after the told "security staff" that he was having thoughts of self harm. In the observation cell, he told defendant Greff that

he did not feel safe in observation and he intended to kill himself. Greff ignored petitioner and walked away. Using a piece of metal, petition cut a 24 centimeter line on his right arm, which required 39 stitches to close. He cut a 3" line on his left wrist, which required five stitches.

On November 21, petitioner cut his throat and his arm with a piece of glass. He passed out and was taken to the hospital, where surgery was needed to repair an artery that petitioner cut.

Petitioner continues to experience "increased suicidal ideation" as a result of the conditions.

## DISCUSSION

Although petitioner discusses numerous conditions and events in the health and segregation complex at Waupun Correctional Institution, I understand his claim to be directed solely at respondents' alleged failure to provide him with adequate mental health care. His claim has two parts. First, he alleges that the conditions of confinement in the complex are exacerbating his mental illness so greatly that he has attempted to commit suicide several times while incarcerated there. Second, he alleges that when he becomes suicidal, prison officials do not take reasonable measures to stop him from harming himself.

Under the Eighth Amendment, prisoners have a right to receive adequate medical care, *Estelle v. Gamble*, 429 U.S. 97 (1976), which includes a right to appropriate mental health treatment. *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987); *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983); *see also Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (under Eighth Amendment, "mental health needs are no less serious than physical needs"). Both aspects of petitioner's claim fall within this right. Adequate care extends not just to things like

5

medication and therapy but also to the conditions of confinement. When these "are so severe and restrictive that they exacerbate the symptoms that mentally ill inmates exhibit," this may result in cruel and unusual punishment. *Jones 'El v. Berge*, 164 F. Supp. 2d 1096, 1116 (W.D. Wis. 2001). In addition, prison officials have a duty to protect prisoners from harming themselves as a result of a mental illness. *Cavalieri v. Shepard*, 321 F.3d 616 (7th Cir. 2003). The standard is the same for either aspect of petitioner's claim: whether a particular official was aware of a substantial risk to petitioner's health or safety and disregarded that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994).

      For the purpose of screening petitioner's complaint, this is the primary question: which respondents were personally involved in the alleged constitutional violations? In cases like this one brought under 42 U.S.C. § 1983, prison officials may not be held liable unless they caused the violation by their own actions or omissions. *Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003). In his complaint, petitioner identifies a long list of prison officials who he says knew that conditions in the complex were likely to exacerbate prisoners' mental illness, but he says nothing about which respondents actually had control over those conditions. It is reasonable to infer that the Secretary of the Department of Corrections (respondent Frank) and the wardens of the prison (respondents Kingston and Thurmer) had such control, but it is not plausible to draw such an inference with respect to any of the lower ranking respondents in the absence of additional allegations. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.")

      With respect to the failure to prevent petitioner from harming himself, he alleges that he told respondents Frank, Kingston, Westfield, Strahota, Ankarlo, Kaemmerer and Greff that he was going to kill himself and they failed to take any actions to stop him. Accordingly, I will

6

allow petitioner to proceed against those respondents.  However, petitioner does not state a claim upon which relief may be granted with respect to any other respondent.  Respondents Baenen, Pollard, Erickson, Breen, Schmidt and McQueeny were officials at the Green Bay prison who had no authority over petitioner's treatment at Waupun.  Further, petitioner admits that Green Bay officials warned officials at Waupun about petitioner's suicidal tendencies.  With respect to the remaining officials, petitioner does not allege that any of them had personal knowledge of a danger to him.

Finally, I note that petitioner has included "John Does 1" in the caption,  but it appears that his only purpose in doing so is to reserve his right to amend his complaint at a later date. Normally, the purpose of naming a "John Doe" defendant is that the plaintiff is aware of conduct by a particular official that he believes violates his rights, but he does not know the name of that official. *Donald v. Cook County Sheriff's Department*, 95 F.3d 548, 555 (7th Cir.1996) ("[W]hen the substance of a pro se civil rights complaint indicates the existence of claims against individual officials not named in the caption of the complaint, the district court must provide the plaintiff with an opportunity to amend the complaint.").  In this case, petitioner has not identified any particular conduct of the Doe respondent, so I cannot allow him to proceed on such a claim.  If petitioner later discovers additional parties who he believes have violated his right to adequate mental health care, he may seek leave to amend his complaint at that time, so long as he is able to meet the requirements of Fed. R. Civ. P. 15 and 20.

Two other motions filed by petitioner are before the court, a motion for appointment of counsel and a motion for a preliminary injunction.  I agree with petitioner that it would be very difficult for him to prosecute this case without the assistance of counsel.  His claims involve complex questions of law and fact, which would be a challenge for even an experienced lawyer

to navigate. This challenge would be nearly insurmountable for someone with significant mental health issues such as petitioner.

Therefore, I will stay all further proceedings in this case temporarily–including petitioner's motion for a preliminary injunction–in order to locate a lawyer who is willing to represent petitioner. A lawyer accepting appointments in cases such as this take on the representation with no guarantee of compensation for his or her work.

Petitioner should be aware that in any case in which a party is represented by a lawyer, the court communicates only with counsel. Thus, once counsel is appointed, the court will no longer communicate with petitioner directly about matters pertaining to this case. It will be expected that petitioner will communicate directly with his lawyer about any concerns and allow the lawyer to exercise his or her professional judgment to determine which matters are appropriate to bring to the court's attention and what motions and other documents are appropriate to file.

## ORDER

IT IS ORDERED that:

1. Petitioner Shaun Matz is GRANTED leave to proceed on his claims that respondents Matthew Frank, Phil Kingston and Mike Thurmer subjected petitioner to conditions of confinement that exacerbated his mental illnesses and that respondents Frank, Kingston, Dan Westfield, Don Strahota, Lt. Greff, Gary Ankarlo and George Kammerer disregarded a substantial risk that petitioner would seriously harm himself.

2. Petitioner's complaint in case no. 08-cv-502-slc is DISMISSED without prejudice to petitioner's refiling it at a later date.

3. Respondents Daniel Braemer, Debra Gempeler, Charles Grisdale, Jeff Garbelman, William Pollard, Michael Baenen, Peter Erickson, Steven Schmidt, Martha Breen, Robert McQueeny, Travis Biddelman, CO Vasos, Michael Vandenbrook, Sgt. Stewart and John Does 1 are DISMISSED from the case. A strike is recorded in accordance with 28 U.S.C. § 1915(g) and *George v. Smith*, 507 F.3d 605 (7th Cir. 2007).

4. Petitioner is obligated to pay the unpaid balance of his filing fee in monthly payments as described in 28 U.S.C. § 1915(b)(2).

5. Pursuant to an informal service agreement between the Attorney General and this court, copies of petitioner's complaint, attached materials and this order are being sent today to the Attorney General for service on the state respondents.

6. With the exception of service of the summons and complaint and respondents' filing of an answer, all proceedings in this case are STAYED pending appointment of counsel for plaintiff. As soon as I locate counsel willing to represent plaintiff, I will advise the parties of that fact. Soon thereafter, a status conference will be scheduled to establish a calendar for this case.

Entered this 5th day of September, 2008.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge